UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                  Case No. 21-cr-20717

v.                                              HON. MARK A. GOLDSMITH

DARRYL DOMINIC WOODFORD,

       Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 22)**

This matter is before the Court on Defendant Darryl Dominic Woodford's motion to suppress (Dkt. 22). The Court denies the motion because (i) Woodford has not established his entitlement to a hearing under Franks v. Delaware, 438 U.S. 154 (1978) regarding his challenge to the affidavit that supported the search warrant for his residence, (ii) the warrant was based on probable cause, and (iii) the good-faith exception to the exclusionary rule bars exclusion of the evidence.[1]

**I. BACKGROUND**

Woodford is charged in a five-count indictment with two counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e); two counts of attempted sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5). Indictment (Dkt. 14). Woodford has filed a motion to suppress all evidence obtained as the result of a search executed at his home on October

---

[1] Because oral argument will not aid the Court's decision, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to the motion to suppress, the briefing includes the Government's response (Dkt. 25) and Woodford's reply (Dkt. 26).

22, 2021. Mot. to Suppress. He also requests a Franks hearing to establish a material omission from the affidavit that supported the application for the search warrant. Id.

The search executed at Woodford's home was authorized by a state-court warrant, which was issued upon an affidavit sworn by Michigan State Police Detective Jonathan Walden. Aff. at 1 (Dkt. 22-1). The search was the result of information provided by a confidential informant and a subsequent investigation of Woodford. Id. at 3–4. On May 29, 2020, Deputy U.S. Marshal Robert Watson reported to Walden that a confidential informant had stated to Watson that her ex-boyfriend, Woodford, "was believed to be contacting minors through social media seeking nude or semi-nude photographs." Aff. ¶ 3A. Based on this information, Walden and FBI Agent Raymond Nichols opened an investigation. Id. ¶ 3D. On June 3, 2020, Walden and Nichols interviewed the informant, who "indicated that Woodford had explicit images and videos of the two of them from when informant was 17 years old." Id. ¶ 3E; Compl. ¶ 6 (Dkt. 1). The informant stated that Woodford "has at least one video of the two of them engaged in sexual intercourse" that "was recorded without consent or knowledge," and that Woodford "has at least one photograph of the informant with his/her buttocks and genitalia visible." Id. ¶ 3F. According to the informant, Woodford "was still in the possession of" the video and photograph, and she "kn[ew] this to be true" because Woodford sent her the video and photograph in April 2020. Id. ¶ 3G.

In addition to this interview, the affidavit in support of the search warrant described interviews with four other potential victims. Id. ¶ 3H. It reported that Woodford had been arrested in 2014 for "[d]istributing sexually explicit materials to children, felony CSAM [child sexually abusive material], [f]elony possession of CSAM and [f]elony using a computer to commit a crime." Id. ¶

3M. And it stated that Woodford had been sentenced to 14 days in jail on May 21, 2014 and that his case was dismissed pursuant to the Holmes Youthful Trainee Act. Id.

Based on the above information, Walden obtained from a state-court judge in Michigan's Wayne County a search warrant for Woodford's home.[2] During the search, police officers seized Woodford's cell phone and laptop, on which they found numerous videos and images that met the federal statutory definition of child pornography, including the photo and video of the confidential informant described in the affidavit. Resp. at 5; Compl. ¶¶ 12–13. They arrested Woodford for production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and possession of child pornography, in violation of § 2252A(a)(5)(B). Compl. ¶ 3.

## II. ANALYSIS

In his motion, Woodford argues that he is entitled to a Franks hearing because the affidavit in support of the search warrant contains a material omission: that the confidential informant did not produce any video or photograph, even though she alleged that Woodford sent a video and photograph to her. Mot. at 3, 9–11. Woodford also contends that, even if the Court does not find that a Franks hearing is necessary, the affidavit does not establish probable cause that he engaged in any criminal activity. Mot. at 11–18. In addition, Woodford states that the good faith exception to the exclusionary rule does not apply. Id. at 18–20. The Court addresses each argument in turn.

### A. Franks Hearing

Woodford argues that he is entitled to a Franks hearing because the affidavit contained a material omission and, consequently, was misleading. Id. at 9–10. In Franks, the United States Supreme Court recognized a defendant's right to challenge the sufficiency of an executed search

---

[2] The police officers who executed the search warrant initially arrived at another home because the warrant contained the wrong address. Mot. at 8 n.1; Resp. at 5 (Dkt. 25). Walden resubmitted the affidavit, and the judge issued a warrant with the correct address. Mot. at 8 n.1; Resp. at 5.

3

warrant on the basis that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155–156. To facilitate this challenge, the case gave defendants a "limited right to an evidentiary hearing concerning the veracity of the affidavit" in support of a search warrant. United States v. Fowler, 535 F.3d 408, 415 (6th Cir. 2008).

Woodford points to the confidential informant's statements that Woodford was in possession of explicit materials because he sent an explicit photograph and video to her in April 2020. Id. at 9. Woodford maintains that the affidavit contained material omissions because it did not state whether the informant could produce any photograph or video, and it did not state whether Walden personally viewed the photograph or video that the confidential informant alleged she received from Woodford. Id. at 10; Reply at 1–2. Woodford contends that, if the informant had produced the allegedly explicit materials, Walden would have included that information in the affidavit. Id. Therefore, he concludes, the warrant "recklessly or intentionally omits the fact that the confidential informant could not produce the video or image for Detective Walden's review." Id. This omission, he asserts, misled the state-court judge because "the warrant's probable cause rests on the implication that Detective Walden was able to determine the existence of a video which constituted child pornography." Reply at 2. By omitting whether Walden had seen the materials or asked whether the confidential informant could produce them, the affidavit misled the state court by "creating a false impression that law enforcement confirmed its existence." Id. Woodford states that the omission of the fact that the informant did not produce the explicit materials—and the omission of whether Walden himself had seen the materials—entitles him to a Franks hearing. Mot. at 10–11.

Franks extends to circumstances in which a defendant contends that the affidavit supporting a search warrant omitted relevant information. Id. Thus, a defendant may be entitled to a Franks hearing when facts were omitted in a warrant application—but only in "rare instances." Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998). The United States Court of Appeals for the Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a Franks hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." Fowler, 535 F.3d at 415. Alleged omissions are held to a high standard because of the "potential for endless rounds of Franks hearings" due to "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." United States v. Martin, 920 F.2d 393, 398 (6th Cir. 1990) (punctuation modified). A defendant is entitled to a Franks hearing based on alleged omissions "if and only if (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." Fowler, 535 F.3d at 415.

Turning to the first part of the Franks inquiry, Woodford has not made a substantial preliminary showing that Walden engaged in a deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit. Woodford presents contradictory arguments regarding the alleged omission and its misleading nature. He contends that he is entitled to a hearing based on the theory that Walden's failure to state that law enforcement reviewed the photograph and video leads to the inference that law enforcement did not review the materials. He states that the confidential informant must not have had the materials because, if she had, Walden would have included this information in the affidavit. But he simultaneously argues that, by omitting

5

information about whether the informant produced the materials and whether Walden personally viewed them, the affidavit created for the state-court judge "a false impression that law enforcement confirmed [their] existence." Reply at 2 (emphasis added). These propositions are contradictory. If the inevitable inference from the alleged omission is that the confidential informant did not have the photograph or video, it is not clear how the omission could also mislead the state-court judge by causing the judge to believe that the informant turned over the photograph and video to law enforcement.

But even accepting Woodford's presumption that the informant did not have the photograph or video she alleged to have received, Woodford has not made a showing that, in omitting this information, Walden acted with the requisite state of mind—that Walden "knowingly and intentionally, or with reckless disregard for the truth" omitted these facts to mislead the state-court judge. Fowler, 535 F.3d at 415; see also Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir. 1998) (explaining that, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts") (emphasis in original); United States v. Fisher, 824 F. App'x 347, 354 (6th Cir. 2020) (finding that defendant's argument that the affidavit failed to provide information that would give the judge a reason to doubt the informant's credibility did not entitle defendant to a Franks hearing when there was no evidence that affiant omitted the information with an intent to mislead). Similarly, Woodford has not made a substantial preliminary showing that, in omitting information about whether Walden personally saw the allegedly explicit materials or asked the informant if she could produce them, Walden engaged in deliberate falsehood or reckless disregard for the truth. "The mere existence of omissions alone is

6

ordinarily not enough to make this strong preliminary showing." Hale v. Kart, 396 F.3d 721, 727 (6th Cir. 2005).

Woodford alleges reckless disregard for the truth. But "those allegations must be accompanied by an offer of proof." Franks, 438 U.S. at 171. "'Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.'" Id. at 171. Woodford has not presented such an offer of proof.

Even if Walden failed to inform the state-court judge that the confidential informant did not produce the allegedly explicit materials and failed to inform the judge about the steps he made to determine the existence of the materials, such omissions would not undermine the existence of probable cause. See Fowler, 535 F.3d at 415 (explaining that, under the second part of the Franks inquiry, a defendant is entitled to a Franks hearing only if the affidavit does not support a finding of probable cause when the omitted material is considered to be part of it). The affidavit established probable cause even if the omitted material were considered, as explained in the analysis below.

The Court finds that Woodford is not entitled to a Franks hearing on the basis of alleged material omissions in the affidavit supporting the search warrant.

**B. Probable Cause**

Woodford argues that, even if the Court does not find a Franks hearing necessary, the affidavit fails to show probable cause that Woodford engaged in any criminal activity. Mot. at 11–18.

The Fourth Amendment protects against "unreasonable searches and seizures" by requiring that warrants be based on "probable cause" and "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists "if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that

7

an offense has been committed and that evidence thereof would be found on the premises to be searched." Peffer v. Stephens, 880 F.3d 256, 263 (6th Cir. 2018); see also United States v. Abernathy, 843 F.3d 243, 249 (6th Cir. 2016) ("Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.") (punctuation modified).

To determine whether an affidavit in support of a search warrant establishes probable cause, an issuing judge must "make a practical, common-sense decision" based on "all the circumstances set forth in the affidavit before [him or her], including the veracity and basis of knowledge of persons supplying hearsay information [that] there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (punctuation modified). In addition, the affidavit must demonstrate "a nexus between the place to be searched and the evidence sought." United States v. Laughton, 409 F.3d 744, 747–748 (6th Cir. 2005) (punctuation modified).

In reviewing the issuing judge's probable-cause determination, the Court's task is to ensure that the judge had a "substantial basis" for his or her conclusion. Gates, 462 U.S. at 238. To encourage the use of and reliance on judicially approved warrants during law enforcement investigations, "reviewing courts are to accord the [judge's] determination great deference," and a probable-cause determination "should only be reversed if it was arbitrarily exercised." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (punctuation modified). The Court's review for sufficiency of evidence is limited to the information contained within the four corners of the affidavit. United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006).

The affidavit properly alleged that a crime had been committed—the possession and distribution of child pornography. It stated that law enforcement conducted an interview with the

8

confidential informant, who "indicated that Woodford had explicit images and videos of the two of them from when informant was 17 years old." Aff. ¶ 3E. It also stated that the informant reported that Woodford had at least one video of Woodford and the informant engaged in sexual intercourse and at least one photograph of the informant's "buttocks and genitalia." Id. ¶ 3F. The informant believed that Woodford still possessed the video and photograph because Woodford sent them to her in April 2020. Id. ¶ 3G. These allegations provided the state-court judge with a substantial basis for concluding that Woodford possessed and distributed child pornography and, therefore, engaged in criminal activity. See 18 U.S.C. § 2252A(a)(5) (prohibiting the knowing possession of "any . . . material that contains an image of child pornography"); id. § 2252A(a)(2) (prohibiting the knowing distribution of such material using any means or facility of interstate or foreign commerce); id. § 2256(8) (defining "child pornography" as any visual depiction of sexually explicit conduct involving a minor); id. § 2256(1) (defining "minor" as someone under 18 years of age). Whether the informant could produce the video and photograph, or whether Walden asked the informant if she could produce them, does not alter the fact that these allegations describe the crimes of possession and distribution of child pornography.[3]

Woodford, however, contends that the affidavit is deficient in three ways. Mot. at 2. First, it did not establish the veracity and credibility of the confidential informant. Id. at 11–12. Second, it did not establish a sufficient nexus between suspected criminal activity or evidence to be seized

---

[3] The allegations also support probable cause for commission of a crime under Michigan law. See Mich. Comp. L. § 750.145c(4) (prohibiting the possession of child sexually abusive material); id. § 750.145c(1)(c) (defining "child" as "a person who is less than 18 years of age"); id. § 750.145c(1)(o) (defining "child sexually abusive material" as "any depiction . . . which is of a child or appears to include a child engaging in a listed sexual act").

9

and Woodford's home. Id. at 12–15, 17–18. Third, it relied on stale information. Id. at 15. The Court addresses each argument in turn.

1. **Veracity and Reliability of the Confidential Informant**

When an affidavit is based in part on information provided by a confidential informant, the court must "consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." United States v. Crumpton, 824 F.3d 593, 615–616 (6th Cir. 2016). These three are not evaluated independently, however, as "more of one compensates for less of the others." United States v. Hines, 885 F.3d 919, 925 (6th Cir. 2018); see also United States v. Stokes, 742 F. App'x 947, 950 (6th Cir. 2018) (describing this exercise as a "sliding scale that runs between less reliable tips (such as those [that] come from anonymous sources) and more reliable tips (such as those that come from known or reliable informants)").

The Sixth Circuit has held that "an affidavit including a tip from an informant that has been proven to be reliable may support a finding of probable cause in the absence of any corroboration." United States v. Woosley, 361 F.3d 924, 926–927 (6th Cir. 2004). "[W]hen the court is provided with assurances that the informant is reliable," "independent corroboration of the tip by police is not required." Crumpton, 824 F.3d at 616. In the absence of any indicia of the informant's reliability and credibility, however, "courts insist that the affidavit contain substantial independent police corroboration." Id. (punctuation modified).

Here, Walden averred that the confidential informant "has provided true and reliable information in the past to Deputy Watson." Aff. ¶ 3C. The Sixth Circuit has stated that its precedent "clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." United States v. Greene, 250 F.3d

10

471, 480 (6th Cir. 2001). Therefore, the state-court judge could reasonably have relied on the confidential informant's allegations in issuing the search warrant.

Woodford argues, however, that Walden's assertion that the confidential informant provided true and reliable information is insufficient to establish her credibility given the "unique and specific nature of U.S. Marshals service," which, due to its role in protecting the federal judicial process, differs from the role of the typical law enforcement officer. Mot. at 11–12. He questions why the informant, who would have been 20 or 21 years old at the time, would be in contact with a U.S. Deputy Marshal, and he states that Walden did not explain the basis of the working relationship between the informant and the U.S. Deputy Marshall in the affidavit. Id. at 11.

But Sixth Circuit precedent stating that law enforcement must simply specify that a confidential informant has previously provided accurate information does not distinguish between particular types of law enforcement, and Woodford does not point to authority to indicate otherwise. Further, other aspects of the confidential informant's statements bolster her veracity and reliability. The confidential informant's identity was known to Deputy U.S. Marshall Watson, and her statements were made based on her firsthand observations of events. Statements made by an informant whose identity is known to the police and who would be subject to prosecution for making a false report are entitled to greater weight than statements made by an anonymous source. United States v. Howard, 632 F. App'x 795, 799 (6th Cir. 2015). And statements made by eyewitnesses are "generally entitled to a presumption of reliability and veracity" where they are reasonably trustworthy. See Allen, 211 F.3d at 976 (finding that corroboration was not necessary where the informant was not anonymous, had worked with police for over five years, and directly observed the criminal activity). Moreover, the details provided in the informant's description of events, such as specific contents of the photo and video and the time in which they were sent, lend

11

additional credibility to her account. See United States v. Jackson, 470 F.3d 299, 307–308 (6th Cir. 2006) ("[T]here could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand . . . .") (punctuation modified). Thus, the affidavit provided Walden's reasons for his belief as to the reliability and credibility of the informant.

The circumstances presented to the reviewing judge included the confidential informant's statements, Walden's assertion that the informant had provided true and reliable information in the past, indicia of the informant's reliability, and Woodford's previous arrest for distributing sexually explicit materials to children and other CASM charges—which, while not alone sufficient, was relevant to a probable cause determination. See United States v. Dyer, 580 F.3d 386, 392 (6th Cir. 2009) ("Although a defendant's criminal history is not dispositive, it is relevant to the probable cause inquiry.") (punctuation modified); United States v. Martin, 526 F.3d 926, 937 (6th Cir. 2008) (noting that defendant's criminal history—included in the affidavit—constituted "independent corroboration" that "provided other indicia of reliability"). With this information, the reviewing judge could draw an independent conclusion that there was a fair probability Woodford engaged in alleged distribution and possession of child pornography. The reviewing judge, therefore, had a substantial basis to conclude that probable cause existed.

### 2. Nexus

Next, Woodford contends that the affidavit fails to establish probable cause that a sufficient nexus existed between the suspected possession or distribution of child pornography and Woodford's home. Mot. at 12–15; 16–18.

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are seizable by virtue of being connected with criminal activity; and

12

second, that the items will be found in the place to be searched." Abernathy, 843 F.3d at 249. Thus, an affidavit must demonstrate "a nexus between the place to be searched and the evidence sought." United States v. Laughton, 409 F.3d 744, 747–748 (6th Cir. 2005) (punctuation modified). "[W]hether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2016). The judge issuing the warrant may infer that the evidence sought is likely to be found in the defendant's residence based on "the type of crime being investigated, the nature of the things to be seized . . . and the normal inferences that may be drawn as to likely hiding places." United States v. Williams, 544 F.3d 683, 686–687 (6th Cir. 2008).

Each of those elements permitted the issuing judge to infer that evidence of criminal activity would be found in Woodford's residence and on his person. The affidavit showed a likelihood that the items sought—Woodford's electronic devices—were connected with alleged criminal activity—the possession and distribution of CSAM and the use of a computer to commit a crime. See Aff. ¶¶ 1–2. The affidavit also showed a likelihood that Woodford's devices would be found in the place to be searched—Woodford's home and person. Id. Walden averred that Woodford was believed to be residing at the address to be searched because law enforcement surveilled the address and observed Woodford, and Woodford's government benefits card and employment records listed the address. Aff. ¶ 3O. He also averred that individuals who collect or distribute CSAM usually maintain and possess their materials on computers or other electronic storage devices. Id. ¶ 6. He stated that, based on his six years of training and experience, computers are one of the preferred methods for obtaining child pornographic materials based on the sense of security and privacy they afford. Consistent with this statement, the Sixth Circuit has stated that child pornography crimes are "committed in a private place with high-speed Internet," United

13

States v. Elbe, 774 F.3d 885, 890 (6th Cir. 2014), and "generally carried out in the secrecy of the home," United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009).  It has explained that those who possess CSAM often store it on devices in their homes.  United States v. Hampton, 504 F. App'x 402, 404 (6th Cir. 2012) (punctuation modified).  And it has held that, as "borne out by . . . cases involving the consumption of child pornography via computer," computers are "personal possessions often kept in their owner's residence and therefore subject to the presumption that a nexus exists between an object used in a crime and the suspect's current residence."  Peffer, 880 F.3d at 272.

The state-court judge could have inferred that Woodford's phone, on which CSAM could be stored, was also likely to be found in Woodford's home or on his person—both of which the affidavit sought to search.  "If an affidavit presents probable cause to believe that a crime has been committed by means of an object . . . a [judge] may presume that there is a nexus between that object and the suspect's current residence, unless the affidavit contains facts that may rebut that presumption."  Id. at 269–270.  There is nothing to rebut that presumption here.

Therefore, the affidavit set forth a sufficient connection between the alleged criminal activity and both the place to be searched and the evidence to be seized.

### 3. Staleness

Woodford argues that the warrant relied on stale information because Walden learned of the confidential informant's allegations in May 2020, and he presented the affidavit to the state-court judge in October 2021.  Mot. at 15–17.  The Government states that, as shown by the affidavit, law enforcement spent the intervening time investigating the confidential informant's allegations, such as by interviewing four other women who had interacted with Woodford and checking Woodford's criminal history.  Resp. at 19.

Stale information cannot be used in a probable cause determination. United States v. Perry, 864 F.3d 412, 414-415 (6th Cir. 2017). The staleness inquiry is a flexible one, however, and it is not meant "to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." Id. at 415.

While the length of time between the events described in an affidavit and the application for a warrant is important, it is "by no means [the] controlling issue." United States v. Leaster, 35 F. App'x 402, 406 (6th Cir. 2002). Instead, the question of staleness "depends on the inherent nature of the crime." United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998) (punctuation modified). In assessing whether information may be considered "stale," the Sixth Circuit has directed courts to consider "(1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the [alleged] criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." Id. (punctuation modified).

These factors weigh against a finding of staleness. Regarding the first factor, the Sixth Circuit has repeatedly stated that, because sexually explicit images can be retained for lengthy periods of time, "child pornography is not a fleeting crime." United States v. Frechette, 583 F.3d 374, 378 (6th Cir. 2009) (finding that information that the defendant subscribed to a child pornography website 16 months before the search was not stale). "[B]ecause the crime is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009) (approving search warrant based on an affidavit that included evidence of the defendant's subscription to a child pornography website that was

15

purchased 13 months before the actual search); see also United States v. Murray, 696 F. Supp. 2d 1044, 1049 (D. Arizona 2010) (finding that 17-month gap between when defendant allegedly downloaded child pornography files and when affidavit was dated did not render information stale, given that affiant certified that, based on her training and experience and the training and experience of other FBI agents, child pornography images downloaded to a computer can remain for an extended period of time).

Regarding the second and fourth factors, the information that Woodford resided at the location to be searched suggests that he was not "nomadic," and a defendant's residence "is clearly a secure operational base." Frechette, 583 F.3d at 379 (punctuation modified).

As for the third factor, the affidavit described items to be seized that have enduring utility to their holder. The Sixth Circuit has stated that "digital images of child pornography can be easily duplicated and kept indefinitely" and, therefore, "can have an infinite life span." Id.; see also Hampton, 504 F. App'x at 404 (finding that information in affidavit was not stale when a search warrant was executed more than 10 months after law enforcement officers observed child pornography shared through defendant's IP address, stating that collectors of child pornography "rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes"). Moreover, Walden stated that in his experience, individuals usually keep CSAM for lengthy periods of time. See United States v. Williams, 544 F.3d 683, 686 (6th Cir. 2008) (holding that courts may give "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found"). Woodford contends that this was not the "typical child pornography investigation" because it involves alleged misconduct arising from "an otherwise legal relationship" between the confidential informant and Woodford. Mot. at 16. But the evidence sought was still child pornography.

16

Given these factors, the information set out in the affidavit was not stale.

**C. Good Faith**

Although the judicially developed exclusionary rule generally prevents the Government from using evidence obtained in violation of the Fourth Amendment against a victim of an unlawful search, an issuing judge's error in issuing a search warrant does not necessarily require suppression of evidence. United States v. McCoy, 905 F.3d 409, 415 (6th Cir. 2018). An exception to the exclusionary rule exists for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." United States v. Leon, 468 U.S. 897, 905 (1984).

To determine whether the good-faith exception applies, a court must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 923 n.23. The Supreme Court has identified four situations in which an officer's reliance would not be objectively reasonable: (i) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit" that violated Franks; (ii) "where the issuing magistrate wholly abandoned his judicial role"; (iii) when the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (iv) when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Id. at 923 (punctuation modified).

Showing good-faith reliance is a less demanding standard than proving the existence of probable cause. United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004). Good-faith reliance requires "a minimally sufficient nexus between the illegal activity and the place to be searched . . . even if the information provided was not enough to establish probable cause." Id. at 596. A bare bones affidavit "that states only suspicions, beliefs, or conclusions, without providing some

17

underlying factual circumstances regarding veracity, reliability, and basis of knowledge" is insufficient to sustain good-faith reliance. United States v. White, 874 F.3d 490, 496 (6th Cir. 2017) (punctuation modified). However, "[i]f the reviewing court is able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched, then the affidavit is not bare bones and official reliance on it is reasonable." Id. (punctuation modified).

Woodford asserts that the good-faith exception is inapplicable based on the third scenario described above—where an affidavit is so lacking in indicia of probable cause that reliance on it is unreasonable. Mot. at 18–20. He states that suppression would serve the exclusionary rule's purpose of deterring police misconduct and that several facts surrounding the execution of the warrant support suppression. Id. He points to the following: Walden's "reckless omission that the informant did not produce the alleged images and video supports suppression"; the affidavit initially listed the wrong address and property description; law enforcement sought a search warrant from a state-court judge located 40 minutes from Woodford's residence, rather than a magistrate judge or a local judge; during the execution of the search, law enforcement asked Woodford's fiancé to identify Woodford's phone and provide the passcode; and law enforcement delayed in seeking a search warrant. Id.

None of these assertions indicates that the affidavit was bare bones or that it was "'completely devoid of any nexus' between [Woodford's] home and the child pornography allegations." United States v. Kinison, 710 F.3d 678, 686 (quoting Carpenter, 360 F.3d at 595–596). The affidavit contained the confidential informant's allegations that described the possession and distribution of child pornography. These allegations included specific facts about the contents of the photograph

18

and video and the time they were sent to the confidential informant. The affidavit also contained Woodford's criminal history and Walden's training and experience in investigating the alleged criminal activity. In line with Sixth Circuit precedent, it stated that, based on Walden's training and experience, any kind of photograph or video was likely to be retained and found on a computer or other electronic storage device. These devices, in turn, were likely to be found in a home or carried on an individual. See Carpenter, 360 F.3d at 595; Paull, 551 F.3d at 523 ("To the extent that one is persuaded that there are gaps in the evidence caused by the delay between the investigation and the search, they were filled in by [the affiant's] experience, whose familiarity with consumers of child pornography gave her adequate reason to suspect that [the defendant] continued to possess illegal images. That is sufficient for a seizing officer to have relied on the warrant in good faith.").

Accordingly, officers had a reasonable basis to believe that the information actually submitted supported the issuance of the search warrant. Therefore, even if the search warrant for Woodford's residence were not supported by probable cause, the good-faith exception would bar exclusion of the evidence.

### III. CONCLUSION

For the reasons set forth above, the Court denies Woodford's request for a Franks hearing and his request to suppress all evidence obtained as the result of a search executed at his home on October 22, 2021. The Court denies the motion to suppress (Dkt. 22).

SO ORDERED.

Dated: November 15, 2022           s/Mark A. Goldsmith
   Detroit, Michigan                MARK A. GOLDSMITH
                                           United States District Judge