UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                          Case No. 21-cr-20717

v.                                   HON. MARK A. GOLDSMITH

DARRYL DOMINIC WOODFORD,

          Defendant.

_____/

## OPINION & ORDER
## (1) DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (Dkt. 29), (2) DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 31), AND (3) DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER (Dkt. 32)

Defendant Darryl Dominic Woodford has filed three motions that are before the Court: a motion for reconsideration of the Court's opinion denying his motion to suppress (Dkt. 29), a motion to dismiss the indictment for violation of his speedy trial right (Dkt. 31), and a motion for revocation of detention order (Dkt. 32). For the reasons set forth below, the Court denies the motions.[1]

## I. BACKGROUND

In 2020, a confidential informant reported to law enforcement that her ex-boyfriend, Woodford, "was believed to be contacting minors through social media seeking nude or semi-nude photographs." Search Warrant Aff. ¶ 3A (Dkt. 22-1). Law enforcement interviewed the informant, who "indicated that Woodford had explicit images and videos of the two of them from when informant was 17 years old." Id. ¶ 3E. The informant stated that Woodford "has at least one video

---

[1] In addition to the motions, the briefing includes the Government's response to the motion for reconsideration (Dkt. 33) and Woodford's reply (Dkt. 39), the Government's response to the motion to dismiss (Dkt. 35) and Woodford's reply (Dkt. 40), and the Government's response to the motion for revocation of detention order (Dkt. 34) and Woodford's reply (Dkt. 38). The Court held a hearing on the motions on January 11, 2023.

of the two of them engaged in sexual intercourse" that "was recorded without consent or knowledge," and that Woodford "has at least one photograph of the informant with his/her buttocks and genitalia visible."  Id. ¶ 3F.  She also stated that Woodford was still in possession of this photograph and video, as he had sent them to her about two months before the interview.  Id. ¶ 3G.

The informant's statements prompted law enforcement to open an investigation into Woodford, during which they interviewed four other individuals who reported that they had contact with Woodford in the past.  Id. ¶¶ 3H–3L.  Law enforcement then obtained from a state-court judge in Michigan's Wayne County a search warrant for Woodford's home.  Id. at 1.  During the search, agents seized Woodford's cell phone and laptop.  Compl. ¶ 11 (Dkt. 1).  According to the complaint, on Woodford's devices, agents found the photo and video of the confidential informant described in the affidavit, videos of two minors that Woodford recorded and that met the federal statutory definition of child pornography, and over 400 images and videos of commercial child pornography.  Id. ¶¶ 12–13.

After Woodford's initial appearance in court on the complaint, the magistrate judge held a detention hearing on November 24, 2021.  She ordered Woodford detained pending trial (Dkt. 13).  On November 30, 2021, the Government filed a five-count indictment charging Woodford with two counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e); two counts of attempted sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5).  Indictment (Dkt. 14).

On March 21, 2022, Woodford filed a motion to suppress all evidence obtained pursuant to the search warrant.  The Court denied the motion (Dkt. 27).

## II. ANALYSIS

The Court addresses each of Woodford's motions in turn.

### A. Motion for Reconsideration

Woodford has filed a motion for reconsideration of the Court's opinion denying his motion to suppress.  In the motion, Woodford sought to suppress all evidence obtained as the result of the search executed at his home.  Mot. to Suppress at 1.  He also requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978) on the basis of alleged material omissions in the affidavit in support of the search warrant.  Id. at 3, 9–11.  Woodford argued that the affidavit contained material omissions because it did not state whether the informant could produce the video or photograph that she alleged Woodford sent her, and it did not state whether the affiant personally viewed these materials or asked the informant if she could produce them.  Id. at 10; Mot. to Suppress Reply at 1–2.  He argued that he was entitled to a hearing to determine what steps the affiant took to determine if the video or photograph existed and why the affiant did not include this information in the affidavit.  Mot. to Suppress Reply at 3.  Further, he contended that, even if the Court did not find a Franks hearing necessary, the affidavit did not establish probable cause that he engaged in any criminal activity.  Mot. to Suprress at 11–18.

### 1. Opinion Denying the Motion to Suppress

The Court denied the motion, finding that (i) Woodford did not establish his entitlement to a Franks hearing; (ii) the warrant was based on probable cause; and (iii) alternatively, the good-faith exception to the exclusionary rule barred exclusion of the evidence.  In discussing the request for a Franks hearing, the Court first explained that a defendant may be entitled to a Franks hearing when facts were omitted in a warrant application—but only in "'rare instances.'"  11/15/22 Op. at 5 (quoting Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998)).  A defendant is entitled to a Franks hearing based on alleged omissions, the Court stated, "'if and only if (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of

probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it.'" Id. (quoting United States v. Fowler, 535 F.3d 408, 415 (6th Cir. 2008)).

Turning to the first part of the Franks inquiry, the Court found that Woodford had not made a substantial preliminary showing that the affiant engaged in a deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit. Id. at 5–7. The alleged omissions pertained to whether the informant could produce any video or photograph that Woodford allegedly sent her or whether the affiant himself had either seen the materials or asked the informant if she could produce them. Id. Woodford simultaneously argued (i) that the omission indicated that the informant did not have the materials because, if she did, law enforcement would have included that information in the affidavit, and (ii) that the omission created for the state-court judge a false impression that the informant had in fact turned over the photograph and video to law enforcement, which confirmed their existence. Id. at 5–6. The Court found these arguments contradictory. Id. The Court then found that, even accepting the proposition that the informant did not have the photograph or video she alleged she had received, Woodford had not made a showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth. Id. at 6. The Court noted that allegations of reckless disregard for the truth "'must be accompanied by an offer of proof,'" and Woodford did not make such an offer of proof. Id. at 7 (quoting Franks, 438 U.S. at 171).

The Court then addressed the second part of the Franks inquiry and determined that the omitted material would not vitiate probable cause. It explained that the informant's allegations "provided the state-court judge with a substantial basis for concluding that Woodford possessed and distributed child pornography and, therefore, engaged in criminal activity." Id. at 9. It found that, whether the informant could produce the video and photograph or whether the affiant asked the informant if she could produce them, the affidavit properly alleged that a crime—the possession

4

and distribution of child pornography—had been committed and supported probable cause for the commission of a crime under federal law and Michigan law. Id. at 9.

In addition, the Court addressed Woodford's argument that the affidavit was deficient in part because it did not establish the veracity and credibility of the informant. Id. It noted that "'the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable,'" which the affiant here had done. Id. at 10–11 (quoting United States v. Greene, 250 F.3d 471, 480 (6th Cir. 2001)). And it found that other aspects of the informant's statements bolstered her veracity and reliability, including that her identity was known to law enforcement, that her statements were made based on her firsthand observations of events, and that she provided a detailed description of events, such as specific contents of the photograph and video and the time at which they were allegedly sent. Id. at 11–12. Based on the affiant's assertion that the informant had provided true and reliable information in the past and other indicia of the informant's reliability, the Court found that the affidavit established the informant's veracity and credibility. Id. at 12.

### 2. Woodford's Arguments in Support of the Motion for Reconsideration

Local Rule 7.1(h)(2) governs motions for reconsideration of non-final orders. As that rule states, such motions "are disfavored." E.D. Mich. LR 7.1(h)(2). Further, such motions can be brought only on the three grounds set forth in the rule. See E.D. Mich. LR 7.1(h)(2)(A)–(C). Woodford bases his motion on the first ground—that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision." E.D. Mich. LR 7.1(h)(2)(A).

Woodford contends that the Court erred in denying his request for a Franks hearing to determine what steps law enforcement took to verify whether the informant possessed the alleged evidence. Mot. for Reconsideration at 2–4; Mot. for Reconsideration Reply at 1–2. He asserts

5

that his arguments regarding the inference from the affidavit's alleged omission were not contradictory and support a finding that a <u>Franks</u> hearing is needed to determine the affiant's investigative efforts, including whether he confirmed that the informant had the photograph and video. Mot. for Reconsideration at 2. He maintains that "[r]egardless of the Court's inference as to the impression of the omitted information, the fact remains: the affiant did not state whether he explicitly sought to confirm that the confidential informant actually possessed what she claimed to." <u>Id.</u> at 1. This omission, he states, undermines a finding of probable cause. Mot. for Reconsideration Reply at 1–2.

Woodford made these same arguments in his motion to suppress. The Court addressed these arguments in its opinion denying the motion. As stated, it noted that Woodford asserted that the omission both suggested that the informant had not produced any photograph or video and created the misleading impression that law enforcement confirmed that the materials existed. 11/15/22 Op. at 5. The Court then proceeded to find that, regardless of the impression of the alleged omission, Woodford was not entitled to a <u>Franks</u> hearing because (i) he did not make a substantial preliminary showing that affiant acted deliberately or with reckless disregard for the truth in omitting information from the affidavit, and (ii) even if the omitted information were considered to be part of the affidavit, the informant's allegations described the crimes of possession and distribution of child pornography and, therefore, created sufficient probable cause. <u>Id.</u> at 6–9.

Woodford does not identify a mistake in the Court's decision and attempts to relitigate issues that he has already raised. "[M]otions for reconsideration are not the proper vehicle to relitigate issues previously considered." <u>United States v. Moore</u>, No. 06-20465, 2022 WL 1251009, at *1 (E.D. Mich. April 27, 2022) (punctuation modified); <u>see also</u> <u>Bowles v. Macomb Cnty. Coll., et al.</u>, No. 20-13175, 2022 WL 1469515, at *2 (E.D. Mich. May 10, 2022) (denying motion for reconsideration that "attempt[ed] to relitigate issues and arguments that the court ha[d] previously

considered" and where it was "clear Plaintiff merely disagree[d] with the court's holding").

"[M]ere dissatisfaction with a Court's ruling is an inappropriate and insufficient ground to support

a motion for reconsideration." Meekison v. Ohio Dep't of Rehab. and Corr., 181 F.R.D. 571, 572

(S.D. Ohio 1998).

In addition, Woodford focuses on the reliability and identity of the informant, contending that

her "unique duality" undermines a finding that she is reliable and requires the affiant to take

additional investigative steps, as she is not "the typical confidential informant imagined by the

[United States Court of Appeals for the] Sixth Circuit" but rather "an alleged minor victim,

potential witness, and the admitted ex-girlfriend of Woodford." Mot. for Reconsideration at 3. In

the motion to suppress, Woodford asserted that the affidavit did not establish the veracity and

credibility of the informant. Mot. to Suppress at 11–12. He referenced a former "relationship"

with the informant in the context of his assertion that the affidavit relied on stale information. See

id. at 16. He did not specifically argue that the informant's multiple roles of alleged victim,

witness, and ex-girlfriend undermined her reliability or that her past relationship with Woodford

required law enforcement to state whether she possessed the alleged evidence. However,

Woodford has not shown that he could not have made this argument when he filed the motion to

suppress. The informant's status as his ex-girlfriend, the informant's allegations in the affidavit,

and the omission at issue were all known to him at the time he filed the motion. "A party may not

utilize a motion for reconsideration to introduce new legal theories for the first time, to raise legal

argumentation which could have been heard during the pendency of the previous motion, or to

present evidence that could have been adduced during the pendency of the original motion."

DiPonio Constr. Co. v. Int'l Union of Bricklayers, Local 9, 739 F.Supp.2d 986, 1004 (E.D. Mich.

2010) (punctuation modified).

Woodford's motion for reconsideration reasserts positions he has argued and raises a new argument that he could have raised previously. Therefore, the Court denies the motion for reconsideration.

**B. Motion to Dismiss**

Woodford has also filed a motion to dismiss the indictment for violation of the Speedy Trial Act. Mot. to Dismiss. He argues that the indictment must be dismissed with prejudice because the Court issued its decision on his motion to suppress more than 30 days after it received all expected documents and took the completed briefing under advisement. Id. at 7.

The Court first discusses the timing requirements of the Speedy Trial Act. It then discusses how these statutory provisions apply to Woodford's motion. It concludes by finding that there was no speedy trial violation because the complexity of Woodford's motion necessitated a continuance.

**1. Periods of Excludable Delay Under the Speedy Trial Act**

The Speedy Trial Act requires that a defendant be tried within 70 days of the filing of the information or indictment, or of the first appearance before a judicial officer of the court in which the charge is pending, whichever occurs later. 18 U.S.C. § 3161(c)(1). The statute excludes certain periods from the 70–day calculation, including those related to pretrial motions, which "have the effect of stopping the speedy trial clock." United States v. Moss, No. 98-4273, 2000 WL 553901, at *5 (6th Cir. April 26, 2000). It excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). It also excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." Id. § 3161(h)(1)(H).

The Sixth Circuit has explained that these two provisions distinguish between motions that require a hearing and those that do not.  United States v. Mentz, 840 F.2d 315, 326 (6th Cir. 1988) (citing Henderson v. United States, 476 U.S. 321 (1986)).  For a motion that requires a hearing, the entire time period from the filing of the motion until the conclusion of the hearing is excluded. Moss, 2000 WL 553901, at *5.  For a motion that does not require a hearing, the entire time period from the filing of the motion until the court receives the last expected filing on the motion is excluded.  Id.  In both instances, the statute "provides that a maximum of 30 days also is excluded from the day the motion is 'actually under advisement.'"  Id. (quoting 18 U.S.C. § 3161(h)(1)(H)).  A motion is "actually under advisement" when "the court receives all the papers it reasonably expects."  Henderson, 476 U.S. at 329.

Excludable time may also include delays due to the granting of continuances. 18 U.S.C. § 3161(h)(7)(A).  The statute excludes periods of delay when the court finds that the "ends of justice" served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial.  Id.

## 2. Application to Woodford's Motion

Here, the Court decided Woodford's motion to suppress without a hearing.  Therefore, the time period from the filing of the motion—March 21, 2022—until the last expected briefing on the motion—May 9, 2022, when Woodford filed his reply—is excluded.  The Court received all papers it reasonably expected on May 9, 2022, and the motion was under advisement as of the following day.  See Mers, 701 F.2d at 1336, 1338–1339; United States v. Martin, No. 2:14–CR–126–3, 2015 WL 269467, at *5 (S.D. Ohio Jan. 21, 2015).  Thirty days from that date is June 8, 2022.  The Court issued its opinion denying the motion on November 15, 2022—beyond the 30-day "under advisement" period.

Woodford contends that the time between the expiration of the "under advisement" period and the date on which the Court issued its opinion is nonexcludable and that the indictment should be dismissed.  The Court denies the motion and finds no speedy trial violation because an ends-of-justice continuance was necessary based on the complexity of Woodford's motion.

### 3.  Ends-of-Justice Continuance

The Speedy Trial Act permits a district court to grant a continuance on its own motion and to exclude the resulting delay if the court, after considering certain factors, "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.  18 U.S.C. § 3161(h)(7)(A).  "This provision gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." Zedner v. United States, 547 U.S. 489, 498 (2006).

The United States Supreme Court has explained that, although the statute "is clear that the findings must be made, if only in the judge's mind, before granting the continuance," it "is ambiguous on precisely when those findings must be 'se[t] forth, in the record of the case.'"  Id. at 506–507 (quoting § 3161(h)(7)(A)).  In considering this ambiguity, it has stated that "the best practice . . . is for a district court to put its findings on the record at or near the time when it grants the continuance."  Id. at 507 n.7.  But "at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)."  Id. at 507.

In line with this reasoning, the Sixth Circuit has repeatedly stated that "'[t]he court does not have to give its reasons contemporaneously with the grant of the continuance.'"  United States v. Richardson, 681 F.3d 736, 739 (6th Cir. 2012) (quoting United States v. Stone, 461 F. App'x 461, 464 (6th Cir. 2012)); see also United States v. Patton, 651 F. App'x 423, 426 (6th Cir. 2016);

United States v. Crawford, 982 F.2d 199, 204 (6th Cir. 1993).  The Court "must consider the justification for a continuance before any delay, but it may state justifications after a continuance has been granted."  United States v. Smith, 510 F. App'x 390, 395 (6th Cir. 2013).  Specifically, "the court is allowed to state the reasoning later in an order denying a motion to dismiss charges, as long as "the reasons stated [are] the actual reasons that motivated the court at the time the continuance was granted."  Crawford, 982 F.2d at 204; see also Richardson, 681 F.3d at 739 (explaining that the court "need only give the reasons no later than the ruling on the defendant's motion to dismiss on Speedy Trial Act grounds").

As the Government notes, see Resp. to Mot. to Dismiss at 5, "virtually every Circuit has held that the entry of findings in the record after granting the continuance is not reversible error so long as the findings were not actually made after the fact,"  United States v. Jones, 56 F.3d 581, 585 n.9 (5th Cir. 1995) (emphasis in original) (citing Crawford, 982 F.2d at 204).  Thus, Woodford is correct when he states that the Court must make its findings supporting a continuance before the speedy trial clock expires, see Mot. to Dismiss at 8, and a court cannot offer post-hoc justifications for a continuance, see United States v. Crane, 776 F.2d 600, 606 (6th Cir. 1985).  But "so long as the court based its continuance on permissible factors under the Speedy Trial Act, and did not invent after-the-fact findings to justify an ends-of-justice continuance," there is no error when it places the findings justifying a continuance on the record by the time it decides a motion to dismiss. United States v. Patton, 651 F. App'x 423, 426 (6th Cir. 2016).

When determining whether the ends of justice outweigh the public and defendant's interests in a speedy trial, the statute requires courts to consider several factors, including "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."  18

U.S.C. § 3161(h)(7)(B)(ii).  It also requires courts to consider "[w]hether the failure to grant such a continuance . . . would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice" and "[w]hether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  Id. § 3161(h)(7)(B)(i), (iv).

"Granting a continuance based on the complexity of a case is statutorily appropriate and has been established in case law as adequate."  United States v. Stone, 461 F. App'x 461, 465 (6th Cir. 2012) (affirming ends-of-justice continuance under § 3161(h)(7)(B)(ii) and (iv)).  Here, while Woodford's motion to suppress was under advisement, the Court determined that the complexity of the motion—and specifically the questions of law it presented—justified a continuance.  The Court recognizes that it did not place the reasons justifying the continuance on the record at the time it granted the continuance.  However, the Court now uses this ruling on Woodford's motion to dismiss to expressly state the reasons that motivated the continuance at the time.   Woodford's motion involved multiple legal issues.  Woodford moved to suppress all evidence obtained through the search at his home and sought a Franks hearing on the basis of an alleged omission in the search warrant affidavit.  Mot. to Suppress at 1.  In addition, he argued that, even if the Court did not find a Franks hearing necessary, the affidavit failed to show probable cause that Woodford engaged in any criminal activity.  Id. at 11–18.  He asserted that the affidavit was deficient in three ways.  Id. at 2.  First, it did not establish the veracity and credibility of the confidential informant.  Id. at 11–12.  Second, it did not establish a sufficient nexus between suspected criminal activity or evidence to be seized and Woodford's home.  Id. at 12–15, 17–18.  Third, it relied on stale information.  Id. at 15.  Finally, Woodford argued that the good-faith exception to the exclusionary rule was inapplicable, pointing to several facts surrounding the execution of the warrant that he maintained

supported suppression.  Id. at 18–20.  Given the number of issues raised, the Court determined that extra time was needed to ensure a just resolution of Woodford's motion and, in turn, enable the parties to effectively prepare once an opinion was issued.  The complexity of the motion was implicit in the Court's 19-page opinion and order addressing each issue that Woodford raised. Woodford continues to argue issues related to the motion, suggesting that he does not see them as so simply resolved.  The Court recognized that the Speedy Trial clock was ticking, but the interests of the public and Woodford in a just resolution of the complex motion required the Court to take additional time in deciding it.

Although delays always create some hardship on defendants and deprive, to some extent, the public's interest in a prompt disposition, the delay here was not inordinate—roughly five months beyond when the decision would have been issued without a continuance.  See, e.g., United States v. Chanu, 40 F.4th 528, 548 (7th Cir. 2022) (affirming district court's exclusion of six months from the speedy trial clock, in part due to complexity of the case, in deciding defendant's motion to dismiss for failure to state an offense); United States v. Banks, 761 F.3d 1163, 1180 (10th Cir. 2014) (affirming continuance of about one year due to complexity of the case and the preparation required); United States v. Rice, 746 F.3d 1074, 1078 (D.C. Cir. 2014) (approving delay of approximately seven months as an ends-of-justice continuance based on case complexity); United States v. Wasson, 679 F.3d 938, 945, 948 (7th Cir. 2012) (affirming district court's grant of ends-of-justice continuances of approximately seven months and approximately six months due to case complexity); United States v. Martin, 2015 WL 269467, at *7 (approving continuance of four months based on the complexity of the case and the need for additional time for counsel to prepare adequately for trial); United States v. Leeper, No. 08–CR–69S–5,12, 2009 WL 5171831, at *4 (W.D.N.Y. Dec. 23, 2009) (finding no speedy trial violation when judge took approximately eight months to decide motions to suppress and cited the motions' complexities as the reason for the

delay); <u>United States v. Graham</u>, No. 1:05-CR-45, 2008 WL 2098044, at *2 (S.D. Ohio May 16, 2008) (granting ends-of-justice continuance of slightly over five months based on case complexity); <u>see also</u> <u>United States v. Gardner</u>, 488 F.3d 700, 719 (6th Cir. 2007) (explaining, in the context of the Speedy Trial Act, that delays "several months short of one year," such as delays of nine months, are not "uncommonly long").

In the instant case, the ends of justice served by granting the continuance outweighed the best interest of the public and Woodford in a speedy trial. The time from June 8, 2022 to November 15, 2022 was an appropriate excludable ends-of-justice continuance.

Therefore, the Court denies Woodford's motion to dismiss.

### 4. Excludable Delay Until Next Available Trial Date

On November 15, 2022, after issuing the opinion denying Woodford's motion to suppress, the Court issued a notice to appear that scheduled a plea hearing/final pretrial conference for November 21, 2022 and a jury trial for November 23, 2022 (Dkt. 28). At the plea hearing/final pretrial conference, defense counsel informed the Court that they intended to file a motion for reconsideration and a motion to dismiss. Defense counsel filed a motion for reconsideration the same day, and on November 29, 2022, filed a supplemental brief for the motion and filed the motion to dismiss. These motions, along with the motion for revocation of detention order, tolled the speedy trial clock.

The Court excludes the time period from the entry date of this opinion and order denying the motions until the next available trial date, given the difficulties COVID-19 has created for scheduling criminal jury trials, including limitations on the number of trials that can be scheduled per week district-wide. <u>See</u> 22-AO-025, <u>Excludable Time Under the Speedy Trial Act, 28 U.S.C.</u> <u>§ 3161(h)(7) in Criminal Matters (Revised)</u> (explaining the impact of COVID-19 and its variants on criminal jury trials and stating that trial postponements may be supported by the order). The

next available trial date is February 16, 2023.  Further, both parties need time to effectively prepare for trial, given the issuance of this opinion denying Woodford's motions.  <u>See</u> § 3161(h)(7)(B)(iv).  At the hearing on these motions, both parties stated that they would be ready to proceed to trial on February 16, 2023.  The ends of justice served by this delay outweigh the interests of the public and the defendant in a speedy trial.

### C.  Motion for Revocation of Detention Order

Woodford has also filed a motion to revoke the order of detention and release him on bond with conditions.  After a detention hearing, the magistrate judge ordered Woodford detained pending trial, citing evidence including (i) Woodford's prior felony conviction for similar offenses for which he received probation under the Holmes Youthful Trainee Act (HYTA), (ii) the Government's proffer that Woodford "engaged in the same unlawful behavior" while on HYTA probation, and (iii) the fact that the production of child pornography charge involves multiple minor victims known to him.  Order of Detention at 3.

When a magistrate judge issues a detention order pursuant to 18 U.S.C. § 3142, a defendant may request that the order be reviewed by the district court.  18 U.S.C. § 3145(b).  The district judge reviews the magistrate judge's detention order <u>de novo</u>.  <u>United States v. Romans</u>, No. 00-5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000).

Under the Bail Reform Act, "[i]f . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).  To make this determination, a court consults the factors set forth in § 3142(g): (i) the nature and circumstances of the offense charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger that the defendant's release would pose to any person or the community.

"The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." United States v. Hinton, 113 F. App'x 76, 77 (6th Cir. 2004).

Where—as is the case here—there is probable cause to believe that the defendant committed one of the crimes listed in § 3142(e)(3), it is presumed that no condition or combination of conditions will reasonably assure the appearance of Woodford as required and the safety of the community.[2]  See United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010).  The presumption in favor of detention imposes a burden of production on the defendant, and the Government retains the burden of persuasion.  Id.  A defendant satisfies the burden of production when the defendant comes forward with evidence that he or she poses neither a danger to the community nor a risk of flight.  Id.  While this burden of production is "not heavy," the defendant "must introduce at least some evidence."  Id. (punctuation modified).  Even if rebutted, the presumption does not disappear entirely.  Id.  Rather, it remains a factor to be considered among those weighed by the district court. Id.  "Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community."  Id. at 946.

In weighing all four factors under § 3142(g), this Court finds that the Government has established by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of other persons and the community.  The Court addresses each of the § 3142(g) factors in turn.

---

[2] A rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community arises when there is probable cause to believe that the defendant committed an offense involving a minor child under 18 U.S.C. § 2251.  18 U.S.C. § 3142(e)(3).  Woodford is charged with sexual exploitation of children and attempted sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e). Indictment.  The indictment establishes probable cause to believe that Woodford committed these crimes.  See United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

### 1.  Nature and Circumstances of the Offense

The nature and circumstances of the offenses charged in this case weigh strongly in favor of detention.  The Bail Reform Act instructs courts to consider "whether the offense . . . involves a minor victim."  18 U.S.C. § 3142(g)(1).  Woodford is charged with sexual exploitation of children, attempted sexual exploitation of children, and possession of child pornography.  Indictment.  The serious nature of these offenses is reflected in the penalties associated with them.  In addition to carrying a presumption of dangerousness due to the involvement of a minor, the sexual exploitation offenses carry a 15-year mandatory minimum sentence.  See United States v. Fitzhugh, No. 16-mj-30364, 2016 WL 4727480, at *4 (E.D. Mich. Sept. 12, 2016) (noting that mandatory sentences under 18 U.S.C. §§ 2251 and 2252 "reflect a Congressional determination that individuals who sexually exploit minors are inherently dangerous").

Further, the complaint alleges that Woodford's crimes involve three separate minors and predatory, secretive conduct.  See Compl. ¶¶ 13–17.  According to the Government, Woodford produced pornographic materials of two minors, who were approximately 11 years old and 8–9 years old at the time, by hiding cameras in bathrooms or changing rooms; he secretly recorded the informant when she exposed her genitalia to him over video chat; and he secretly recorded himself and the informant engaged in sexual intercourse.  Id. ¶¶ 7, 13–17; Resp. to Mot. for Revocation of Detention Order at 2, 10.  The Government also alleges that, in addition to the images that Woodford produced, his devices contained hundreds of images of commercial child pornography, including those that depict children as young as 4–5 years old.  Compl. ¶ 12.  These are serious charged offenses.

### 2.  Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Woodford.  "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence

of the defendant's guilt."  Stone, 608 F.3d at 948.  "In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence."  United States v. Foster, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020).

The weight of the evidence of Woodford's dangerousness is strong given the alleged offenses and reinforces the need for detention.  As noted, the Government's case involves clandestine recordings of three minors.  "Just one sexually-related offense against just one minor is enough to imply dangerousness."  Fitzhugh, 2016 WL 4727480, at *5 (emphasis in original) (finding that this factor supported detention when the defendant was facing charges of production and receipt of child pornography and online enticement that involved multiple minors).  The Government's case also involves numerous child pornographic images allegedly found on Woodford's devices, which further indicates that the weight of the evidence of dangerousness is strong, as "[s]exual exploitation of children via the internet, even without physical contact, harms children in real and lasting ways."  United States v. King, No. 3:22-CR-60-TAV-DCP-1, 2022 WL 3645996, at *4 (E.D. Tenn. Aug. 24, 2022) (finding that the weight of the evidence of dangerousness warranted pretrial detention when the defendant, charged with violating 18 U.S.C. § 2252A, was found with hundreds of images of child pornography on his phone).

### 3.  History and Characteristics of the Defendant

Section 3142(g)(3) directs the Court to consider the history and characteristics of the defendant, including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g)(3)(A)–(B).

Woodford points to several factors related to his history and characteristics that he maintains support his motion. He states that he has strong family ties to the area, particularly to his mother, who is willing to serve as a third-party custodian; strong community ties; a history of verifiable employment, including working as a package handler at FedEx, to which he can return; and a history of compliance with the court's conditions during a 2014 case.[3] Mot. for Revocation of Detention Order at 7–8.

However, two considerations outweigh these factors. First, Woodford has a history of similar offenses. In 2014, he was arrested for distributing sexually explicit materials to children, felony child sexually abusive material (CSAM), felony possession of CSAM, and felony using a computer to commit a crime. He was sentenced to 14 days in jail, was granted probation under HYTA, and had his case dismissed. Second, the complaint alleges that some of Woodford's conduct underlying the offenses in this case—recording the informant when she exposed her genitalia to him on video chat—occurred while he was on HYTA probation. Woodford's history and characteristics weigh in favor of detention.

### 4. Nature and Seriousness of the Danger Posed by the Defendant's Release

The fourth and final factor requires that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by person's release." 18 U.S.C. § 3142(g)(4). The Court must "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. United States v. Vance, 851 F.2d 166, 169 (6th Cir. 1988).

---

[3] The Government asserts, however, that Woodford's representation that he was employed at FedEx before his arrest is inconsistent with his statement to Pretrial Services, made at the time of his arrest, that he had been unemployed for a year and had been supporting himself by selling personal items. Resp. to Mot. for Revocation of Detention Order at 13.

In considering this factor, courts have recognized the "very real and devastating consequences" that the production and possession of pornography has on minor victims.  United States v. Pece, No. 1:20-CR-186-1, 2020 WL 6263640, at *6–*7 (N.D. Ohio Oct. 23, 2020) (noting that, while not every child pornography or sexual exploitation of children case warrants pretrial detention, "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm . . ." and observing that "possessors of child pornography aid in creating and sustaining a market for such material") (punctuation modified); see also United States v. Livingood, No. 5:21-MJ-5375-MAS, 2021 WL 5918553, at *3 (E.D. Ky. Dec. 15, 2021) ("Even where there is no contact with an actual child, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims."); United States v. Mobasseri, No. 1:17CR138, 2020 WL 3026070, at *3 (N.D. Ohio June 5, 2020) ("Each download and view of a child-pornographic image or film exacerbates the harm to the child involved in its production.").  Courts have found that a defendant allegedly placing children at risk in the past through the production, possession, or receipt of child pornography indicates that the defendant poses a danger to the community if released.  See Pece, 2020 WL 6263640, at *6–*7; United States v. Nunez, No. 17-mj-30666, 2018 WL 1026473, at *4 (E.D. Mich. Feb. 23, 2018).  In light of Woodford's past behavior involving similar conduct, the evidence that the offenses in this case involved multiple minors, and courts' recognition of the harm to child pornography victims, the Court finds that the danger to the community favors detention.

### 5.  Woodford's Alternatives to Detention

Woodford maintains that there are several conditions the Court can impose to reasonably assure his appearance in court and the safety of the community, including having his mother serve as a third-party custodian, home detention, restricted contact from minors or potential witnesses,

and a ban on the possession of electronic devices with access to the internet.  Mot. for Revocation of Detention Order at 9.

The Court is unconvinced that these measures will reasonably assure the safety of other people or the community.  In his motion, Woodford notes that his mother, with whom he proposes he live, has grandchildren living in her home and that these minor children will be there until "likely mid-January," id., although Woodford has not provided a date at which the grandchildren will definitely be living at a different residence.  Moreover, Woodford has not addressed how frequently the grandchildren are likely to visit their grandmother once they are living at a different address.  Given that the charged offenses involve multiple minors, releasing him to a home with minor children would be a grave danger.  Even if these children are no longer living with Woodford's mother, having his mother serve as third-party custodian does not offer assurance given the clandestine, online nature of his crimes.  The Sixth Circuit has noted that possession of child pornography is "extremely dangerous to the community, particularly because such activities are often hidden from a defendant's closest friends and family members."  Foster, 2020 WL 6791572, at *3 (punctuation modified).

In addition, the Government notes that Woodford proposes to be released to the same home where he resided when he committed some of the alleged offenses, see Resp. to Mot. for Revocation of Detention Order at 11, which "rais[es] the concern that no matter how watchful his [mother] may be, he can successfully hide his criminal activity from [her]," United States v. Risinger, No. 3:22-cr-0007-GFVT-MAS-1, 2022 WL 1773362, at *5 (E.D. Ky. May 31, 2022); see also Pece, 2020 WL 6263640, at *7 (finding it "most concerning" that the defendant was able to commit the alleged crimes from the privacy of the residence to which he proposed to return).

The Court finds that home detention and restricted contact from minors or potential witnesses are similarly insufficient to assure the safety of the community.  Sexual exploitation of minors or

possession of child pornography does not require leaving one's residence—or any travel at all—and does not require in-person contact with a minor.

Regarding Woodford's argument that he would not have internet access at his residence and that the Court may ban him from possessing electronic devices with internet access, "[c]ourts have repeatedly noted that, generally, prohibiting internet access to someone on release is a near impossibility given the internet's ubiquitous presence."   Pece, 2020 WL 6263640, at *7 (punctuation modified) (rejecting argument of defendant, charged with sexual exploitation of children, that any safety concerns could be addressed by prohibiting him from accessing the internet); see also Foster, 2020 WL 6791572, at *3 (finding that "[t]here is simply no failsafe way to prevent any and all exposure [to potential victims] even if a defendant forfeits all electronic devices and is denied access to the Internet") (punctuation modified); United States v. Hoilman, No. 3:22-CR-91-KAC-DCP, 2022 WL 17640199, at *4 (E.D. Tenn. Dec. 13, 2022) ("Where, as here, the Defendant allegedly committed an internet-dependent crime, the ubiquity of the internet . . . creates a significant obstacle to reasonably assuring the safety of any other person or the community").  For example, in Fitzhugh, the court found that proposed conditions such as having the defendant's mother serve as a third-party custodian and removing all internet access and electronics from the home would not reasonably assure that defendant—charged with three crimes involving the sexual exploitation of a minor—would not pose a danger to the community.  2016 WL 4727480, at *5.  It reached this conclusion in part because "wireless networks are ubiquitous and internet-capable devices are easy to obtain," and the defendant's mother "simply cannot guarantee that the Defendant will not be able to access the internet and further distribute images." Id.  Restricting a defendant's internet access would also be ineffectual when one considers the fact that a person can visit websites by using cellular data, rather than WIFI.  See United States v. Cornish, No. 3:20-CR-00003, 2020 WL 1498841, at *4 (E.D. Mar. 30, 2020) ("The myriad of

Internet-capable devices available, including those that work with data plans rather than wifi access, render policing [defendant's] Internet use almost impossible.").  The Court is not reasonably assured that it can successfully limit Woodford's access to the internet and to electronic devices.

Woodford also bases his motion in part on his detention at Michigan's Monroe County Jail. Mot. for Revocation of Detention Order at 9–10.  In his motion, he states that the jail allows legal visits only over Zoom, which prevents him from having privileged discussions with his attorney about the legal strategy in this case due to privacy concerns.  Id.  However, at the Court's hearing on the motion, defense counsel represented that the jail has changed its policy to allow in-person legal visits.  Therefore, this consideration does not support release.  Even if the Zoom policy were in effect, the policy is not a sufficient basis for release given the danger that Woodford poses.

Considering all of the evidence, the Court finds that the Government has met its burden and shown by clear and convincing evidence that no condition or combination of conditions can address the risk of danger that Woodford presents to other people or the community.  Woodford's motion to revoke the order of detention is denied.

### III. CONCLUSION

For the reasons set forth above, the Court denies Woodford's motion for reconsideration of the Court's opinion denying his motion to suppress (Dkt. 29), motion to dismiss the indictment for violation of his speedy trial right (Dkt. 31), and motion for revocation of detention order (Dkt. 32).

SO ORDERED.

Dated: January 23, 2023                s/Mark A. Goldsmith
         Detroit, Michigan                     MARK A. GOLDSMITH
                                                        United States District Judge